(No. 52386.—

PETER BEJDA *et al.*, Appellees, v. SGL INDUSTRIES, INC., *et al.*, Appellants.

*Opinion filed September 15, 1980.—Rehearing denied November 26, 1980.*

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas R. Nelson, Edward J. Zulkey, and Richard H. Donohue, of counsel), for appellant Gerbing Manufacturing Corporation.

Joseph M. Tobias & Associates, Ltd., of Chicago (Joseph M. Tobias, of counsel), for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

On December 13, 1972, plaintiff Peter Bejda was an employee of Goltra Industries, Inc., Barrington. He was operating a grinding machine when its grinding wheel disintegrated and pieces of the wheel struck him. On March 8, 1974, Bejda and his wife, Kazimera, filed suit for the injuries resulting therefrom, naming defendant Gerbing Manufacturing Company as one of several defendants.

On motion by Gerbing, alleging that plaintiffs failed to file a sufficient bill of particulars, the circuit court of Cook County dismissed plaintiffs' product liability action. The appellate court reversed and directed the circuit court to consider sanctions less drastic than dismissal. (73 Ill. App. 3d 484.) We allowed · Gerbing leave to appeal. Because of the nature of the issue presented, a detailed recitation of the facts and procedural history is necessary.

Plaintiffs seek to hold Gerbing liable on the theories (1) that a component of the grinding machine, a so-called "variable pitch pulley and drive belt," was designed, manufactured and sold by Gerbing in an unreasonably dangerous defective condition which allowed the grinding wheel to spin at an excessively high rate of speed, thereby causing the wheel to disintegrate; and (2) that the component, as manufactured, was in an unreasonably dangerous defective condition because it contained no warning of its inability to control the speed of the wheel. Gerbing was not named as a defendant in plaintiffs' original complaint nor in either of plaintiffs' first two amended complaints but was added as a defendant in plaintiffs' third amended complaint, filed on December 12, 1974. On February 10, 1975, Gerbing moved to strike plaintiffs' third amended complaint, insofar as it related to Gerbing, for failure to state a cause of action. On February 26, the motion to strike was granted, and plain-

tiffs were allowed seven days to amend.

On March 17, 1975, plaintiffs were granted leave to file their fourth amended complaint instanter. On April 2, 1975, Gerbing again filed a motion to strike, alleging that plaintiffs' fourth amended complaint failed to apprise Gerbing of the nature of the alleged defect in its pulley and drive belt and that the complaint failed to allege that Gerbing manufactured the product in an unreasonably dangerous condition. In response to the motion to strike, plaintiffs explained that they had not yet obtained an expert's evaluation of Gerbing's pulley and drive belt so as to enable plaintiffs to describe the alleged defect in more specific, technical terms, and the court denied Gerbing's motion to strike.

On February 10, 1976, Gerbing filed a demand for a bill of particulars. It claims that it filed the demand because it had determined that plaintiffs' answers to Gerbing's interrogatories were insufficient and because plaintiffs had failed to comply with Gerbing's request for production of documents. The demand for a bill of particulars requested, *inter alia*, that plaintiffs "[i]temize each defect in the 'drive system or installation' which permitted *** the grinding wheel to run at a speed in excess of tolerable limits and to disintegrate." The demand also asked that plaintiffs explain how they knew that Gerbing designed, manufactured and sold the drive system.

On February 18, 1976, the hearing on Gerbing's motion was continued to March 2, and though not appearing of record, Gerbing claims that this was done at the request of plaintiffs. On March 2, plaintiffs presented additional answers to Gerbing's interrogatories and a response to the request for production of documents, and the motion was thereupon continued to March 18 to enable Gerbing to assess the sufficiency of the materials presented.

On March 15, 1976, Gerbing sent plaintiffs a letter

requesting production of certain items and reminding plaintiffs that they had not responded to Gerbing's demand for a bill of particulars. To allow plaintiffs time to respond to the letter, the hearing on Gerbing's motion to dismiss was continued to April 15.

The motion did not appear on the court call for April 15 and was rescheduled for April 26. Defendant did not present its motion on the latter date, and it claims that it did not do so because of the representations of plaintiffs that they would respond to the production request and the demand for a bill of particulars within 21 days after April 26.

When Gerbing received no further response, it again filed a motion to dismiss on June 9, 1976, for plaintiffs' failure to supply the requested bill of particulars and documents. The motion was entered and continued to June 23, and when plaintiffs' attorney failed to appear that day, Gerbing's motion to dismiss was granted.

On June 29, 1976, plaintiffs' attorney moved to vacate the June 23 order of dismissal, explaining that he was detained on another matter that day and arrived in court 15 minutes late and found the order of dismissal already had been entered. The motion to vacate the order of dismissal was granted.

Also on June 29, 1976, plaintiffs filed a response to Gerbing's demand for a bill of particulars. Plaintiffs stated therein that the pulley and drive belt in question has a nameplate with the name "Gerbing" on it; that plaintiffs were informed, and the nameplate would indicate, that Gerbing designed, manufactured and sold that pulley and drive belt; that the pulley-and-drive-belt system was defective in that it allowed the grinding wheel to spin at an excessive rate of speed, thereby causing the wheel to disintegrate; that the exact nature of the defect which caused the wheel to run out of control was then unknown; and that the pulley-and-drive-belt system was also

defective because of the absence of a warning that the wheel would spin at an excessive rate of speed. Gerbing felt that plaintiffs' response failed to establish a relationship between the grinding wheel and Gerbing's manufacture and sale of the pulley and drive belt, and it moved for an order striking plaintiffs' bill as nonresponsive. The motion was granted on July 26, 1976, and plaintiffs were granted 56 days in which to file an amended bill.

On January 31, 1977, Gerbing moved to dismiss, alleging the failure of plaintiffs to file an amended bill. The court denied the motion and granted plaintiffs an additional 14 days to file an amended bill, and the matter was continued to February 16. For reasons which do not appear of record, the court heard the motion on February 15 rather than the 16th, and it dismissed plaintiffs' action as against Gerbing. Upon being informed of the court's February 15 order of dismissal, plaintiffs moved to vacate the order, alleging (1) that the order was entered without notice to them, since the matter was not scheduled for that day; and (2) that their complaint stated a cause of action against Gerbing, and the alleged defect could not be further particularized. On March 3, the court granted plaintiffs' motion to vacate and allowed plaintiffs 84 days to file an amended bill. In its order, the court stated that it would not entertain further requests by plaintiffs for extensions.

On September 26, 1977, Gerbing filed a motion to dismiss with prejudice because plaintiffs had not yet filed an amended bill of particulars. Although Gerbing therein alleged prior difficulties in obtaining discovery from plaintiffs, it prayed for dismissal only on the ground that plaintiffs failed to file an amended bill. The court granted plaintiffs 14 days to file an amended bill, and on October 11 plaintiffs refiled the bill previously stricken. On October 12, the court entered an order stating that plaintiffs had failed to comply with the court's previous

order to file an amended bill, and it set Gerbing's motion to dismiss for hearing on October 14. On that day, the court granted the motion to dismiss and certified the case for appeal. Since the court's order does not specify otherwise, we assume, as Rule 273 requires, that the court intended the dismissal to operate as an adjudication upon the merits, *i.e.*, with prejudice. 73 Ill. 2d R. 273.

The sole issue presented is whether the circuit court was authorized in dismissing plaintiffs' complaint with prejudice as a sanction for the failure to provide a sufficient bill of particulars. Gerbing argues initially that such a dismissal is authorized by section 37 of the Civil Practice Act. We do not agree. That section provides:

> "If the party unreasonably neglects to furnish a bill of particulars, or if the bill of particulars delivered is insufficient, the court may in its discretion strike the pleading, allow further time to furnish the bill of particulars or require a more particular bill to be delivered." (Ill. Rev. Stat. 1977, ch. 110, par. 37(2).)

Under the section, the most severe sanction authorized is the striking of the pleading to which the bill of particulars relates. A dismissal of a complaint, as in the present case, cannot be equated with a striking of that pleading, since there exists "a marked difference between an order striking a case from the docket, which is not final [citation] and an order dismissing the suit *** " (*Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 108-09). This distinction is a substantial one and a distinction that has long been recognized in Illinois. In *Frederick v. Connecticut River Savings Bank* (1883), 106 Ill. 147, 149-50, the court held that no appeal or writ of error would lie from the striking of a bill in equity, and the court there stated:

> "If it be said that the order striking the 'suit' from the docket is *** a final order, it may be answered that such order concluded no one or any thing. On a proper application the cause could be reinstated, and progress to a final hearing and

decree. And were plaintiff in error to file a bill similar to this, can any one suppose that the order under consideration could be pleaded to bar a recovery? Surely not, because there has been no trial on the merits, either on demurrer or proofs. There must be a final hearing before the decree can be pleaded as a bar. The striking of the case from the docket was not the equivalent of dismissing the bill for the want of equity."

(See also *Ridgely v. Central Pipe Line Co.* (1951), 409 Ill. 46, 49; *Calkin v. Roberts Park Fire Protection District* (1949), 402 Ill. 579, 580.) We therefore conclude that section 37 does not authorize the dismissal of a complaint.

Although the circuit court's dismissal of plaintiffs' action is not authorized by section 37, the dismissal could nonetheless be upheld as within the court's inherent authority to control its business. A plaintiff's failure to take any action as ordered by the court evidences want of prosecution by that party (*Leonard v. Garland* (1911), 252 Ill. 300, 303), and as the court said in *Epley v. Epley* (1928), 328 Ill. 582, 585, "The trial court may dismiss a suit for failure of complainant to prosecute it with due diligence where no sufficient cause is presented, and this power exists independent of any statute." It has therefore been recognized by various authorities, including our appellate court (*American Rolling Mill Corp. v. Ohio Iron & Metal Co.* (1904), 120 Ill. App. 614), that "a failure to file *** a bill [of particulars] in disobedience of the order of the court may be a ground [for dismissal] within the sound discretion of the court." (27 C.J.S. *Dismissal & Nonsuit* sec. 64, at 425 (1959), citing *Botkins v. Sorter* (W.D. La. 1939), 29 F. Supp. 991, *McCarthy v. Thames Dyeing & Bleaching Co.* (1944), 130 Conn. 652, 36 A.2d 739; *Nickerson v. Glines* (1915), 220 Mass. 333, 107 N.E. 942.) In some instances, dismissal is authorized by statute or rule as in the *McCarthy* and *Nickerson* cases above

cited, but the authority to dismiss for failure to provide a bill of particulars is also an authority recognized at common law to be inherent in the courts. (*Gross v. Clark* (1881), 87 N.Y. 272, 276.) Section 37 of the Civil Practice Act does not purport to expressly limit this common law authority, and we therefore find unchallenged the idea that the authority is viable.

Notwithstanding the general authority of the court to dismiss an action, we conclude that dismissal of plaintiffs' action was not proper. A bill of particulars need not "state more than the party is bound to prove" (71 C.J.S. *Pleading* sec. 398, at 831 (1951)), and in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, the court said that plaintiffs in a product liability case "must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." As our appellate court has said, "This language does not indicate that proof of the specific defect which causes the product to be in an unreasonably dangerous condition is necessary." (*Bollmeier v. Ford Motor Co.* (1970), 130 Ill. App. 2d 844, 849. See also *Erzrumly v. Dominick's Finer Foods, Inc.* (1977), 50 Ill. App. 3d 359, 363; *Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 515.) "A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably to be expected in light of [its] nature and intended function.' (See Annot., 51 A.L.R.3d 8 (1973); Rhinegold, *Proof of Defect in Product Liability Cases,* 38 Tenn. L. Rev. 325, 337 (1971).)" (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 574.) These matters may be proved inferentially, whether by direct or circumstantial evidence. (64 Ill. 2d 570, 575.) We therefore

conclude that the circuit court abused its discretion by ordering plaintiffs to "positively" state the defect in Gerbing's pulley and drive belt. If plaintiffs wish to do so, they may attempt to prove their case by inference. *Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N.J. 358, 410, 161 A.2d 69, 97-98.

For the foregoing reasons, the judgment of the appellate court is affirmed insofar as it reversed the circuit court's order of dismissal, and it is reversed insofar as it remanded the cause for the imposition of a lesser sanction. The order of the circuit court is reversed, and the cause is remanded to that court for further proceedings.

*Appellate court affirmed in part and reversed in part; circuit court reversed; cause remanded.*